Catron, Ch. J.
delivered the opinion of the court.
A motion was made against the administrator, who had fully administered; the fact was found for him; then a scire facias was run against the heirs of the intestate to subject the lands descended to the satisfaction of the judgment.
To this suit by scire facias, the widow was made a party for the purpose of subjecting her life estate to one third of the lands descended, as tenant in dower. Judgment was given against her, which she seeks to reverse.
This raises the question as between the widow and creditor of the husband, who does the law prefer? To understand this, the nature of an estate in dower must be enquired into.
A tenant in dower is where the husband is seized of an estate of inheritance, and dies. In this case, the wife shall have a third part of all the lands and tenements whereof he was seized, at any time during the coverture, to* hold to herself for the term of her natural life. 2 Black. Com. 129: Co. Litt. 31. a. By the common law, if a husband acquired an estate, which was subject to descend to his heir, the wife, at the same time the husband acquired his *226 mle, had vested m her a right of dower; and although the husband aliened the estate the next hour, it mattered not. The wife, on the husband’s death, was entitled to dower, notwithstanding the alienation. 2 Black. Com. 132: 1 Thos. Co. Litt. 576. We seethe widow’s title was superior to that of the purchaser. And why was this so? For the very plain and sensible reason, as Blackstone tells us, that the sustenance of the wife, and the nurture and education of the children, was of higher consideration than the protection of the purchaser. 2 Com. 130.
The widow by the common law, having precedence of the purchaser of the husband, it follows, she would have equal precedence as against the judgment creditor of the husband, who by force of his judgment, execution and sale, could only acquire such title as the husband could have made^ by deed. By a fiction of law, the estate in dower relates to. the marriage. It is adjudged in Ful-wood’s case, (4 Co. -65,) that the widow shall hold her dower discharged from all judgments, leases, mortgages', •or other incumbrances made by her husband after the marriage, because her title being consummated by his death, has relation to the time of the marriage, .and of course is prior to all other titles. She claims by and through her husband, has the oldest title, is in under him for the valuable consideration of marriage, the best respected in the law, and cannot be disturbed by any other claiming under the husband. 4 Co. 66, 6th Resolution.
These being the common law rights of the widow, how far have they been altered by statute? This depends mainly upon the act of 1784, ch. 22, sec. 8. That act tells us, that whereas, the dower allotted by law in lands, for widows, in the then unimproved state of the country, was a very inadequate provision for the support of such widows; that it was highly just and reasonable that those, who, by their prudence, economy and industry, had contributed to raise up an estate to their husbands, should be entitled to share in it.. It then provides, the. widow *227 shall have the right to dissent to the husband’s will, and be entitled to retain the homestead. This was well, and in accordance with the liberal professions in the caption. But in the same breath the legislature sweeps from the wife her previous rights, and puts her in the power of the husband, to an extent abhorred by the common law, and yet more by the civil law, (Thomas’ Co. 567, a.) by enacting, that the widow shall be entitled to dower of one third part of all the lands and hereditaments of which her husband died seized or possessed; not of the lands of which he was seized at any time during the coverture; thus preferring the purchaser from the husband. Few provisions in our statute book have been fraught with worse consequences than the repeal of the principle of the common law, founded on the wisdom of ages; so ancient that neither Coke nor Blackstone can trace it to its origin; wide spread as the Christian religion, and entering into the contract of marriage among all Christians: the husband on the most solemn occasion of his life, contracting that of all his worldly goods he endows the wife.
All these high sanctions of the first 'of rights of married women, are set at naught by the act of 1784, so celebrated in other respects. Widowhood and poverty in the State of Tennessee, are associated in the- mind, with but now and then a partial and rare exception, to relieve our suffering sympathies from the general misery. The affluent wife reduced in an hour to the impoverished widow, presents a contrast, which, for bold abruptness, has few parallels in the ordinary misfortunes incident to human life. Cut off from dower, at the freak, or by the occasional ill will or dissipated habits of the husband, until nothing of the real estate, worthy the name of dower, is left to her on his death; allowed the sorry pittance of a child’s part of the personal property, with generally a large and often a helpless family of children on her hands, neither energy nor dignity of conduct can be expected from the widow, or is possible in most cases. The chil *228 dren are of necessity raised in accordance with the des- . . J r , , T ,. . , titute circumstances oí the mother, it matters little that they have property; to her they look for support and education. Not so much at the school, as in the well ordered family, are children educated; there it is that morality, industry and propriety should and must be mainly taught. To this end the widow’s means are greatly inadequate in this State; wholly so in most instances. But too often she is driven into a second marriage, the most unadvised and unfortunate, ruinous to her peace and the prosperity of her children, to.escape from her poverty stricken wretchedness. This is not the least misfortune to the community, attendant upon thepolicy that sacrifices the ancient rights of the.widowtothe purchaser from the husband. Did the act of 1784 intend the creditor at the husband’s death, should also be let in to defeat the widow’s vested right? The act does not say so; and if the creditor be let in, it must be by a construction in his favor. It should be recollected, the husbands cut off the wives by the act of 1784, as to the purchaser, without any compensation, save the flattering encomium in the caption, “ that it was highly just and reasonable, that those who by their prudence, economy and industry had contributed to raise up an estate to their husbands, should be entitled to share in it:” And we are told that by common consent, the creditor has also been allowed to seize upon the dower of the widow. Now, if the act of 1784 intended the widow “should share in the estate she helped to build up,” it is certainly true the dower claimed is of the description set forth, being a hereditament of which the husband died seized. No exception in favor of the creditor is made by the statute in express terms; and we have endeavored to show none ought to be made by implication; that no case could be adduced where a statute should be more strictly construed in favor of a common law right, than one depriving the widow of the ancient and cherished right of dower. The widow’s right stands on *229 the same foot it did previous to the passage of the act of 1784, in reference to the lands of which the husband died seized. The right relates to the marriage, and the widow is a purchaser for a valuable consideration, not to be disturbed in law or equity. 1 Dev. Rep. 30. The heir takes the land subject to this incumbrance; it is a title superior, because prior to his. The creditor by the act of 1784, ch. 11, is authorized through the administrator, to reach the real estate descended; against whom? Not the widow. But he is to have judgment against the heir,.and execution is to issue ‘‘against the real estate of the deceased debtor in the hands of the heir.” The land, in the condition it descended to the heir, incumbered with the widow’s dower, the creditor can reach as was done in Fulwood’s case. 4 Co. 65. As to the widow, the judgment must be reversed and she go hence.
2. For the defendants in error, the heirs of Nathaniel Young, it is affirmed, that no estate subject to execution at law, descended to them from their father; that the equity of redemption was a mere equity encumbered with a condition which the heirs might or might not perforin by paying the money to the mortgagee.
We hold it to be undoubted law, that had Nathaniel Young been living, and judgment been rendered against him, the equity of redemption could not have been levied upon and sold. The fieri facias only operates upon legal titles. Sawley vs. Gower, 2 Vern. 61: Plunket vs. Penson, 2 Atk. 290. These cases show the English law to have been, that an equity of redemption is not assets in the hands of the heir, by reason of the descent, of which he could be made liable at law for the bond debt of the ancestor. To a proceeding against the heir to recover a bond debt of the ancestor, does our proceeding through the administrator against the heir assimilate itself. Vide Harder vs. Shute, 1 Yerger’s Rep. 1, 6, 7. On the. statute of 5 George II. are grounded all our legislative acts and judicial decisions, subjecting lands equally and *230 generally for the payment of debts. It provides, that the houses, lands, negroes, and other hereditaments and estates in the plantations, shall he liable to and chargeable with all just debts, dues and demands; and shall he assets for the satisfaction thereof, in like manner as real estates are liable to the satisfaction of debts due by bond, but subject to the like remedies, as personal estates are in the plantations by seizure and sale. Hence the execution issues, commanding the sheriff to make the money recovered by the judgment, of the goods and chattels, lands and tenements of the defendant.
The statutes have rendered these liable; yet the writ is legal in its character, and only operates on a title that may be recovered by an action of ejectment, forasmuch as the sheriff cannot turn out the defendant or his tenant, and put the purchaser into' possession. The case of Harder vs. Shute, was a strong one: Harder’s interest to the land had been sold at execution sale: Shute became the purchaser; Harder had purchased from Garrison, and held his bond for title. The .naked legal title was outstanding in Garrison; yet the court held that Shute took no interest in the land that he could enforce in equity. Equity follows the law. There having been no legal liability resting on Harder, equity could create none. 3 P. Wins. 409: 2 Yerger’s Rep. 397. On this principle is grounded an undoubted rule of property In this State, in all cases of purchasers under executions, '■’■caveat emptor;” take care what you buy; there is no warranty of title, either express or implied, for your protection. 2 Yerg. 396. It is clear the equity of redemption which descended, was not legal assets in the hands of Young’s heirs. This is not so seriously urged for the plaintiff’ in error; hut,
3. It is contended, and this is the main point in the cause, that although the land cannot be reached, the rents and profits can, and that the plaintiffs are entitled to judgment against the heirs for the rents by them received from *231 the mortgaged premises. That the heirs are in possession and have received rents, is admitted.
Without involving ourselves in the inquiry, why, if the estate descended is not liable, the rents and profits can behadhy the creditor; we will treat this point as though the premises had descended to the heirs disencumbered of the mortgage.
The proceeding was had by virtue of the act of 1784, ch. 11. The extent of her remedy is distinctly declared by the act, “ execution shall issue against the real estate of the deceased debtor, in the hands of the heir, against whom judgment shall have been given. The statute gives no rents and profits, but a right to obtain judgment, seize and sell. The heir is in as the ancestor was, enjoying for himself. The ancestor could not be called on for rent by the creditor before he had a lien by judgment or afterwards; no more can the heir. If the plain import of our statute needed the aid of authority, it is satisfactory, that tire heir is entitled to the rents and profits. 2 Atk. 107: 2 Leigh’s Va. Rep. 59: Gibson vs. Fasley, 16 Mass. Rep. 280, 285. The pernancy of the profits always accompany the seizin. So neither is the heir heard to set up a claim for improvements of the estate to the prejudice of the creditor. If the improvements exceed the value of the rents, he who made them must sustain the loss. 1 Term. 454 — 5. There are in-formalities in the pleadings, and a want of personal service of the scire facias on the minor heirs, indispensible to support a judgment against them, who do not in fact defend, but the guardians defend. Yet as the three points above adjudged are conclusive of the merits of the cause, no notice need be taken of the informalities. The judgment below, as to the heirs of Young, will be affirmed.
Judgment affirmed.